LENORA WOLFGRAM, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

St. Louis Court of Appeals, July 19, 1912.   Motion for Rehearing Overruled October 15, 1912.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Action on Policy: Defenses: Burden of Proof. A fraternal beneficiary association, seeking to defeat a recovery on a certificate of life insurance on the ground that insured died by accident directly

traceable to employment in a prohibited occupation, has the burden of establishing that defense to the reasonable satisfaction of the jury.

2. **TRIAL PRACTICE: Demurrer to Evidence: Uncontradicted Evidence.** To justify an appellate court in convicting a trial court of error in refusing to direct a verdict for defendant on the ground that a defense preclusive of a recovery by plaintiff was established by uncontradicted evidence, the facts necessary to establish such defense must have been conceded by plaintiff, either expressly or by necessary implication, or they must have been established by uncontradicted evidence, which did not depend for its probative value upon the unconceded credibility of defendant's witnesses, and which was of such a character that no two reasonable minds could honestly differ concerning the correctness of defendant's contention as to the conclusion to be drawn therefrom.

3. **FRATERNAL BENEFICIARY ASSOCIATIONS: Action on Policy: Defenses: Prohibited Employment: Sufficiency of Evidence.** In an action on a certificate of life insurance issued by a fraternal beneficiary association, defendant pleaded that insured died by accident directly traceable to employment as a freight train brakeman—an occupation prohibited by the certificate. Plaintiff conceded that insured died from injuries received from being run over by a freight train operated by the railroad company which employed insured as a freight train brakeman, and that plaintiff, who was the wife of insured, had been paid money by said company in settlement of her claim for damages on account of his death. *Held*, that this concession by plaintiff did not establish that the death of decedent occurred while he was on duty, and that the fact that plaintiff had received money from the railroad company in settlement of her claim for damages did not conclusively establish that decedent was injured while on duty, since the company might have felt liable, or inclined to pay such damages, although decedent was killed while not on duty. *Held, further*, that the evidence introduced by defendant did not conclusively establish its defense, and that the case was properly submitted to the jury.

4. ———: ———: ———: ———: **Railroad Brakeman.** Where a railroad brakeman is killed by a train when not on duty nor performing any office of his employment, his death is not directly traceable to his employment, within a life insurance certificate issued by a fraternal beneficiary association, exempting the association from liability in case of the death of a member from accident directly traceable to employment as a brakeman.

5. **APPELLATE PRACTICE: Trial Practice: Credibility of Witnesses.** The credibility of witnesses is for the jury and is not for either the trial court or the appellate court to pass upon.

6. ————: **Rulings on Evidence: Harmless Error: Contracts.** Where the trial court submitted the case to the jury solely on the theory that the contract relied on was as defendant contended, errors in the admission and exclusion of evidence bearing on what the contract was were not prejudicial to defendant.

Appeal from Hannibal Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Benj. D. Smith* and *Chas. K. Hart* for appellant.

(1)   The peremptory instruction asked by the appellant should have been given to the jury. Where the undisputed evidence shows that the plaintiff should not recover the court should peremptorily instruct the jury for the defendant. Knorpp v. Insurance Company, 195 Mo. 637; Cornovski v. Transit Co., 207 Mo. 263; Furber v. Bolt Co., 185 Mo. 301; Powell v. Price, 111 Mo. App. 320; Howard v. Hurst, 137 S. W. 1; May v. Crawford, 150 Mo. 504. (2)   The court erred in refusing to admit in evidence Sections 17, 18, 19 and 20 of the by-laws of appellant, in force from July, 1905, to July, 1908. These by-laws were in force at the time when Wolfgram was injured, and while same were passed after the date when the benefit certificate was issued, both the application of Wolfgram and the benefit certificate sued on provide that after passed by-laws shall be considered as part of the contract of insurance, and these by-laws related to the manner of conducting the business of the order and did not change any substantial right of the member existing at the time of the issuance of the benefit certificate. Richmond v. Supreme Lodge, 100 Mo. App. 8; Lewine v. Supreme Lodge, 122 Mo. App. 547.

*M. L. Farres* and *Charles E. Rendlen* for respondent.

(1) Respondent made a prima facie case and was entitled to a judgment when she put the policy in evidence and showed the death of insured, that she was the beneficiary and appellant admitted due and timely proofs of death were made. Burden was then on defendant to show plaintiff had lost her right to the benefits thereunder. Mulroy v. Knights of Honor, 28 Mo. App. 467; Forse v. Supreme Knights of Honor, 41 Mo. App. 117; Winn v. Modern Woodmen of America, 137 S. W. 292. (2) The cause of death, the credibility of witnesses, inferences to be drawn from the physical facts in evidence and weight thereof, are matters which respondent was entitled to have the jury determine. Adams v. M. W. of Am., 145 Mo. App. 207; Winn v. M. W. of Am., 137 S. W. 292; Gannon v. Gas Co., 145 Mo. 502. Respondent was entitled to have the jury determine the credibility of the testimony offered, on the affirmative defense, even though there had been nothing offered, to contradict that offered by appellant. Winn v. M. W. of Am., 137 S. W. 292; Gannon v. Gas Co., 145 Mo. 502. (3) Appellant having alleged the death of deceased William H. Wolfgram, in a certain manner, and relying thereon alone as its defense, the burden was on appellant to prove the same as alleged. Jefferson v. Life Association, 69 Mo. App. 126; Gannon v. Gas Co., 145 Mo. 502; Winn v. M. W. of Am., 137 S. W. 292.

CAULFIELD, J.—Suit by the widow of William H. Wolfgram, as beneficiary in a benefit certicate issued to her husband by the defendant, a fraternal beneficiary association, on January 10, 1902. The insured died December 13, 1906. The plaintiff had verdict and judgment for the full amount of the certificate and interest, and defendant has appealed.

All the facts necessary for the plaintiff to prove in order to make out a prima facie case were agreed upon by the parties at the trial, though plaintiff also offered proof of them.   The defendant was, therefore, put to its sole defense, which was an affirmative one that the insured died by accident "directly traceable to employment" in the "occupation" of brakeman on a freight train, in which he was engaged, and the certificate exempted the defendant from liability on account of death so occurring.   The burden was on the defendant to establish this defense to the reasonable satisfaction of the jury.   [Queatham v. Modern Woodmen of America, 148 Mo. App. 33, 42, 127 S. W. 651.]   Defendant contends, however, and this is its principal contention, that the trial court erred in refusing to direct a verdict for it on this issue as to which it held the burden of proof.   To justify our convicting the trial court of error in this respect, the facts necessary to this defense must have been conceded by the plaintiff, either expressly or by necessary implication, or they must have been established by uncontradicted evidence which did not depend for its probative value upon the unconceded credibility of defendant's witness, and must be such that no two reasonable minds could honestly differ as to the conclusion therefrom urged by the defendant being the correct one.

What is the state of the proof in this respect? The plaintiff expressly or impliedly conceded at the trial that her husband died on December 13, 1906, from injuries received on December 12, 1906, from being run over by one or more cars of a freight train of the C., B. & Q. R. R. Co., and that he was then an employee of said company in the capacity of a freight train brakeman; also that plaintiff was paid money by said company in settlement of a claim for damages on account of her husband's death. It was not conceded, however, that the insured, Wolfgram, was injured during working hours or while on duty or acting within the scope

of his employment or performing any of the duties thereof. The only evidence which tends to prove such unconceded facts was offered by the defendant, and consisted solely in the testimony of one Kenning, which proceeded in substance as follows: Kenning, Wolfgram and one Chilcote formed the train crew which brought a C., B. & Q. freight train from Hannibal to St. Louis the morning of December 12, 1906, Kenning being conductor, Wolfgram head brakeman, and Chilcote rear brakeman. (Chilcote died before the first trial and his deposition was not procured.) Arrived in St. Louis the crew remained in the way car on the way car track. Being in the way car did not signify that they were on duty, however. In order to go on duty or become a member of a crew one must be "called" by a call boy and sign a book to show he had been "called." Kenning was called at 7:30 to go out on No. 73, a freight train due to leave St. Louis for Hannibal, at 9:30 o'clock p. m. But he could not say, nor was it otherwise shown that Wolfgram had been "called" to go out that day or on that train. That was the train by which Wolfgram was injured. Even if Wolfgram had been called to go on that train he would not have been compelled to go on duty until 9 o'clock p. m. Until then his time was his own. If he went to work before, he did so voluntarily and without pay. It was the duty of the yard crew (a different crew than the train crew) to see that trains were properly made up and ready to leave on time with the air brake cars ahead and connected with the engine. It was the duty of the freight brakeman to couple up the air hose and in order to do that it was necessary to go between the cars and reach down to within about a foot of the ground. Sometimes train crews came voluntarily ahead of time, to do these things, but Kenning would not say that it was customary for Wolfgram to do it, or that he did it on this occasion. Kenning left the way

car at 8:40 o'clock to take the initials and numbers of the cars in the train. Twenty cars had been coupled to the way car, a few at a time, and the train was still in process of being "made up." No engine had yet been attached. Kenning had been out of the way car ten minutes and had reached the seventeenth car away from the way car when two cars were "kicked" down hard against the train, moving it six or seven car lengths in the direction the way car was. Then he heard a cry and looking back saw a lantern standing between the rails under the train. He found Wolfgram lying lengthwise with the train, between the sixth and seventh cars from the way car, with a leg and an arm cut off and his head hurt. A car length away, the lantern was standing, lighted, inside and near the rail, in a position where the cars could have passed over it without turning it over. All this occurred at 8:50 o'clock p. m., ten minutes before Wolfgram was required to be at work, even if he had been called. There is no direct testimony identifying the lantern as Wolfgram's, but Kenning, being asked where Wolfgram was lying with reference to the lantern answered, "He was about a car length farther back from where *his* lamp sat." Kenning testified that he did not know that Wolfgram had left the way car until he found him injured, and did not know what Wolfgram had been doing where he was found or outside the car.

Now it is clear from the foregoing that the facts necessary to establish the defense relied upon have not been conceded by the plaintiff. It is conceded that he was killed by a freight train of the company by which he was employed as a freight train brakeman, but that does not by any means establish that his death was directly traceable to such employment. If a railroad employee is killed by a train when not on duty or performing any office of his employment, his death cannot be said to be directly traceable to his employment any more than would the death in like manner of a person

who was not in the employ of the company at all. It is the same with the concession that plaintiff was paid money by the railroad company in settlement of a claim for damages on account of her husband's death. The company might have felt liable or inclined to pay such damages although Wolfgram was killed entirely outside of his employment. Defendent is, then, necessarily driven to a reliance upon the testimony of its witness Kenning for its conclusive proof that Wolfgram's death was by accident directly traceable to his employment as freight train brakeman. The trouble with this is twofold: First, the credibility of Kenning's testimony was for the jury and not for either the trial court or this court to pass upon; second, Kenning, himself, does not testify to the facts necessary to establish the defense, but such establishing depends upon inferences to be drawn from the facts which his testimony tends to prove. Thus, Wolfgram could not have been on duty unless he was "called" and there is no direct proof that he was "called;" it is purely a matter of inference or conjecture as to whether he was called or not. Again, the time for him to go to work had not arrived even if he had been "called;" to infer that he was at work we must assume, without proof, that he was voluntarily working on his own time, without pay, while the train was yet in process of being "made up." There is absolutely no direct proof as to what he was doing when injured, though defendant would have us infer that he was coupling the air hose. To accept such inference we must assume that he went between the cars and did not go for any purpose other than to couple the air hose. Defendant urges that the position of the lantern indicates that it must have been set down by Wolfgram in order to permit him to do the coupling. Even this mere inference must depend on an assumption that the lantern was Wolfgram's and is weakened by the fact that the lantern was found

standing a car length away from where Wolfgram was found. It is evident that respondent's so called conclusive case resolves itself into a mere matter of debatable inferences—inferences which, in this case, have been rejected by four juries.

We are of the opinion that the trial court properly refused to direct a verdict for the defendant. For it to have done otherwise would have been a flagrant encroachment upon the province of the jury. The point is ruled against the defendant.

The defendant complains of alleged errors in the admission and exclusion of some evidence bearing on what the contract was, but as the trial court submitted the case to the jury solely on the theory that the contract was as defendant contended, we conclude that the alleged errors could not have been prejudicial to the defendant.

The judgment is affirmed. *Reynolds, P. J.,* concurs. *Nortoni, J.,* not sitting.