GEORGE MALONE and ORA MALONE, Respondents, v. STATE LIFE INSURANCE COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, June 19, 1919.

1. **INSURANCE :** Life Insurance: Premiums: Payment. Where note was given for the first annual premium on a life policy, *held* that the policy took effect and remained in force until the note became due and default was made in payment.

2. ———: ———: ———: ———. It is competent for a life policy to provide that nonopayment of a premium note shall render the policy void, or suspend it during default, and that there shall be no liability for loss occurring after default and before the policy is reinstated by payment.

3. ———: ———: Policy: Payment. Where an insurance company took a note for the first annual premium, a part payment on the note does not prevent a forfeiture nor does a part payment which was no more than the amount of the premium already earned constitute a waiver of the insurer's right to assert that the policy had been forfeited for nonpayment of the premium note.

4. ———: ———: Contracts: Payment. Where an insurance agent who accepted a note for the first annual premium payable to himself made settlement with the company for the amount in excess of that which he was entitled to retain as commission, thereby treating the note as his own, *held* that, though the insured defaulted, paying only a portion of the amount due on the note, the policy became and remained in force during the first year, so that recovery could be had on insured's death within that period.

5. ———: "Military Service." Under a life policy providing that if within five years from its date the insured shall engage in any military or naval service, the liability of the company shall be limited to the return of the premiums paid, etc., an insured must be deemed to have entered military service when he has passed the required examination, taken oath, been enrolled, and has submitted himself to the order of the military authorities.

6. ——: ——. Where a life policy provided that if insured shall. engage in military or naval service in time of war the liability of the company in event of death while so engaged, or within six months thereafter, as a result of such service, shall be limited to the return of the premiums, it devolves on the company, in the event of the death of insured while in military service, to prove that his death occurred while so engaged, and that death resulted from or was caused by such service.

7. ——: Life Insurance: Defenses: "Line of Duty." In an action on a life policy, mere proof that insured while in military service at a training camp was killed by accidental gunshot wound at the hands of a fellow soldier, and that he died in line of duty, which means that he was not violating any military law, is insufficient to' show that insured met his death as the result of military service, and so to defeat recovery under the provisions of the policy excepting such risk.

Appeal from Pemiscot County Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

AFFIRMED.

*N. C. Hawkins* for appellant.

*Ward V. Reeves* for respondents.

STURGIS, P. J.—This is a suit by the beneficiaries on a policy of life insurance in the sum of $2000 on the life of Robert A. Malone. The policy is dated Aug. 8, 1917, was delivered to the insured on Aug. 17, 1917, and the insured died July 26, 1918. Plaintiffs recovered and defendant appeals.

The first defense is that the policy in suit was forfeited by the insured's failure to pay when due the note given for the first annual premium, the death of the insured occurring after such alleged forfeiture. This premium was sixty dollars and was paid by the insured's note for that amount due in sixty days, payable to defendant's local agent, who on Aug. 17, 1917, delivered the policy and took this note of that date. The policy recites that the contract is made in consideration of the application and of the sum of sixty dollars *to be paid in*

*advance* to the company on or before the delivery of the policy. The policy further recites:

"If any note or other obligation given for the first year's premium or any part thereof on this Policy shall not be paid when due, this Policy contract shall be and become null and void without any notice or action of the company, notwithstanding any receipt which may have been given for such premiums."

The policy also provides for payment of the premium to the Company's agent on a proper receipt signed by the officers of the company and countersigned by such agent. The evidence shows that the agent delivering the policy and collecting the premium was given sixty days within which to make settlement with the company for all such premiums. In view of these provisions and this method of doing business we cannot uphold defendant's contention that the policy never took effect as a contract because the premium was not paid in advance as required. The note was given in advance and was accepted by the agent as payment and this was clearly within his authority, though the policy forbid and withheld from the agent any power to change or modify the terms of the policy. [Marshall v. Missouri State Life Ins. Co., 148 Mo. App. 669, 676, 129 S. W. 40.]

The policy itself contemplates that notes may be taken in payment of premiums and provides, as we have noted, that if such note be not paid when due the policy shall *ipso facto* become null and void without notice to the insured or any action by the company. Under these provisions the delivery of the policy and the taking of the note in question by the agent made a valid contract of insurance subject to being forfeited on failure to pay the premium note when due. The policy took effect and remained in force till the note became due and default was made in its payment. [Marshall v. Missouri State Ins. Co., 148 Mo. App. 669, 676, 129 S. W. 40; Mooney v. Insurance Co., 80 Mo. App. 192, 195.]

It is perfectly competent and valid for an insurance contract to provide that the non-payment of a note given for the premium shall render the policy totally void or suspended during the default and there is then no liability for a loss occurring after the default and before the policy is reinstated by payment, if so provided. [3 Joyce Ins. (2 Ed.), sec. 1209; Barnes v. Continental Ins. Co., 30 Mo. App. 539, 550; Palmer v. Continental Ins. Co., 31 Mo. App. 467, 473; Leeper v. Franklin Life Ins. Co., 93 Mo. App. 602.] In the present case the premium note of sixty dollars given for the first annual premium was not paid by the insured at maturity but four days later the insured paid $15 thereon to the local agent, who credited this amount on the note. Nothing was paid on the note thereafter. The acceptance of this part payment of the premium note after same became due and the policy forfeited thereby is claimed to be a waiver of the forfeiture occasioned by the default in payment when due. We do not think so. Nothing is shown as to the cause or circumstances of this payment other than the mere fact that the insured paid it to the agent holding the note. Doubtless the insured intended shortly to pay the balance of the note and had he done so the failure to pay promptly when due would have been waived. No extension of the time of payment is shown. Had the insured paid this fifteen dollars in the first instance and given his note for the balance with a forfeiture provision in case of default, then the insured would have been in the same condition as here. Or had he paid the fifteen dollars before the note became due and then defaulted for the balance, there would have been a forfeiture. [Marshall v. Missouri State Life Ins. Co., 148 Mo. App. 669, 676, 129 S. W. 40.] A mere part payment of what was due could not prevent a forfeiture unless there was some agreement express or implied to that effect. [3 Joyce Ins. (2 Ed.), sec. 1365.] It is held in Pennsylvania Ins. Co. v. Geraldine, 31 Mo. 30, that where a policy provided that a forfeiture might be declared and was de-

clared for failure to pay a premium note when due and thereby the policy was made null and void from and after the date of default, yet the insurance company could collect the part of the premium earned prior to the default. In the present policy the defendant recognized the insured's right to pay the premiums quarterly and the amount paid was no more than the first quarter's premium, most of which was then earned. The amount paid, however, was by no means sufficient to keep the policy in force till the date of the insured's death. This same fact was noted in Marshall v. Ins. Co., supra, and the court remarked there, as we do here, that such fact is not a decisive fact. The point is that there is no waiver of the effect of non-payment of a premium note by thereafter receiving or collecting what the insurer is justly entitled to receive or collect in the absence of a waiver. [Insurance Co. v. Divilbiss, 67 Mo. App. 500, 504; American Insurance Co. v. Klink, 65 Mo. 78, 83; Home Ins. Co. v. Hamilton, 143 Mo. App. 237, 243, 128 S. W. 273; Continental Ins. Co. v. Phipps, 190 S. W. 994.]

The above principles of law are based on the theory that the insurer takes and holds the note given for the premium and thereby extends the time for the payment of the premium to it to the due date of the note and that default in the payment of the note is a failure to pay the premium to the insurer. If such were the facts here we would hold that this policy was forfeited and void prior to any loss thereunder. The facts, however, are that the insured by an arrangement with the local agent gave his note for the amount of the first year's premium payable to the agent individually. The agent delivered him the policy, reported the premium paid in full, and, within the sixty days allowed him for doing so, remitted to the defendant the full amount of premium due it. The agent was allowed to retain as his commission, sixty per cent of the first year's premiums. The local agent never treated this note as belonging in whole or in part to the defendant. It was

payable to the agent individually; he never turned it over to the company and so far as is shown the defendant never knew that this premium was paid by note instead of cash till after the death of the insured. The note was then delivered to defendant's attorney by the local agent to be used in evidence. The local agent testified, and there is nothing to the contrary, that he had sixty days in which to make settlement with the company on all policies; that he made this note as he did, so the insured could pay it and made settlement with the company, himself paying it the forty per cent due it on this and other policies; that the note belonged to him; that the company had been paid by him what was due it out of the sixty dollars and that the note was his. "In this case," he says, "I paid the company, took the note from the boy (insured) and delivered the policy." No part of the note was paid when due but the insured paid the agent and holder of the note $15 four days later. This payment was not reported to the defendant and it knew nothing of the note. Under these facts we hold that so far as defendant is concerned the premium was paid in cash and the insured's indebtedness was to the agent individually and not to the company. "The transaction is held to constitute a loan by the agent to the insured where the former pays the insurer the amount of the premium and takes the insured's note therefor." [3 Joyce Ins. (2 Ed.), 1202c; Hudson v. Compere (Tex.), 61 S. W. 389.]

In Mooney v. Ins. Co., 80 Mo. App. 192, the agent took a note for the premium payable to himself, remitted to the defendant the part due it and treated the note as his own. Such note was not paid when due and it was held that the provision of the policy forfeiting same for nonpayment of any premium note did not apply to this note "because as to defendant the premium was actually paid." The court said:

"Under these circumstances then it would seem clear that the defendant cannot complain of the default

in paying the first premium, for as to said company it had been paid, nor as to default in paying the note given therefor since it manifestly belonged to the agent. It has been repeatedly decided that where the insurance company charges premiums personally to the agent, who gives credit to the insurer, it amounts to 'payment to the company.''

There are a number of cases holding in effect that where an agent delivers the policy, takes. a note for the premium payable to' himself, keeps and treats such note as his own and pays to the company all the premium due it, then a default in paying the note when due to the agent is not a default as to the company within the meaning of a clause protecting the company against failure to pay the premium or a note given therefor. [Griffith v. New York Life Ins. Co., 101 Cal. 627, 40 American State Reports 96; Reppond v. National Life Ins. Co. (Tex.), 101 S. W. 786, 11 L. R. A. (N. S.) 981.; Rosenborg v. Johnson (Colo.), 99 Pac. 315; Buckley v. Citizens Ins. Co. (N. Y.), 81 N. E. 165, 13 L. R. A. (N. S.), 889; Union Life Ins. Co. v. Parker (Neb.), 62 L. R. A. 390.]

The defendant relies on Lyke v. American Nat. Assur. Co., 187 S. W. 265, as holding the contrary. So far as it does so it is disapproved, but the facts there are different and the real question was whether the insurance policy became a completed contract by its acceptance and payment of the premium by the assured. As stated in that case the agent was not paying money for the insured to keep the policy alive and he had not taken any obligation or even promise of the assured to pay the amount to himself or any one. What was said on this point in that case was based on Whiting v. Massachusetts Ins. Co., 129 Mass. 240, 37 Amer. Rep. 317, and the distinction between that case and this is pointed out in this quotation:

''Whatever may be the law as applicable to the payments of annual premiums under a policy *which has once attached,* we are of opinion that the contract cannot

be originally created without the consent of the assured.''

We hold, therefore, that there was no forfeiture of this policy by reason of the insured failing to pay this note when due.

The second defense to this policy is based on what is termed the war clause of the policy as follows: ''If within five years from the date of this Policy the insured shall engage in any military or naval service in time of war (death from submarine or aviation service, connected with actual warfare, as a part thereof, is a risk not covered by this policy), the liability of the company in event of the death of the insured while so engaged, or within six months thereafter, as a result of such service, will be limited to the return of the premiums paid hereon, exclusive of any extra premium paid for military or naval service, less any indebtedness to the company hereon.'' A provision is then made by which the insured may pay an extra premium and keep the policy in force during military service. This was not done.

The insured enlisted in the army on April 25, 1918, and continued in military service till his death on July 26, 1918. The defendant insists that this fact alone exempts the company from liability and construes the war clause of the policy to mean that there is no liability except for return of the premium if the insured engages in military service in time of war and dies ''while so engaged.'' It is said in Reed v. Insurance Co., 207 S. W. 74, that one has entered military service when he has passed the required examination, taken the oath, been enrolled and has subjected himself to the order of the military. There can be no question, therefore, as to the insured having entered the military service and having died ''while so engaged.'' Defendant's construction of the war clause in question ignores the effect of the clause ''as the result of such service'' and defendant insists that such clause applies only to deaths occurring ''within six months thereafter.'' This,

we think, is a strained construction and the clause plainly restricts defendant's exemption from liability to death occurring not only "while so engaged" in military service, but also to death "as a result of such service." If this clause is ambiguous in this respect it should be construed favorably to the insured. [Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S. W. 151.] In order, therefore, for defendant to escape liability on this ground it devolves on it to prove both (1) that the insured's death occurred while he was engaged in military service and (2) that such death resulted from or was caused by such service. The proof of the first by no means proves the second. [Mathews v. M. W. of A., 236 Mo. 326, 139 S. W. 151; Wolfgram v. Modern Woodmen of America, 167 Mo. App. 220, 226, 149 S. W. 1167.]

The defendant introduced no evidence as to the cause or circumstances of the insured's death. It relies on the proofs of death furnished by the plaintiffs and which plaintiffs put in evidence. This proof of death is merely an admission by plaintiffs of the facts there stated as to the cause of the death, as it is shown that plaintiffs had no personal knowledge of such facts. In the proofs of death plaintiffs stated that the insured was "killed by accidental gun shot wound at the hands of a fellow soldier;" that he was engaged in military service from April 25, 1918, until his death at Jefferson Barracks, Missouri; that he had taken out war risk insurance in the sum of $10,000. One of plaintiffs, the insured's father, testified that the insured enlisted in the infantry branch of the service; that he was at Jefferson Barracks, Missouri, a training camp for soldiers; that he never served as a soldier except in that camp; that he did not know of his own knowledge how he died. The proofs of death were largely based on and had attached thereto a statement purporting to come from the war department and signed T. O. Murphy, Adjutant General, in which it is stated that "Robert A. Malone enlisted April 25, 1918, Died July 26, 1918, at

Jefferson Barracks, Mo., of accidental gun shot wound in abdomen, in line of duty, a recruit, unassigned." It was shown that the term "in line of duty" means that the insured was not violating any military law.

This evidence, or admission rather, does not conclusively prove more than that the insured died while in military service and not that his death resulted therefrom. He had enlisted, was at a military training camp and was killed accidentally by a gun in the hands of another soldier. What either of them was doing at the time is not shown. It is mere conjecture as to how such other soldier came to have a gun at that time or how it came to be discharged. We only know that it was accidental. Unless, therefore, we are to hold that proof of the deceased being in military service when he was accidentally shot and killed conclusively proves that death was caused by such military service, then there is no such proof of the latter fact. We must, therefore, hold that defendant has failed either by plaintiff's admission or by evidence of its own to conclusively prove that insured's death was the result of his military service. Such military service evidently furnished the occasion but it is not shown to have been the proximate cause of the insured's death. [Kelly v. Fidelity Life Ins. Co. (Wis.); 172 N. W. 152.]

Our attention is called to the case of Miller v. Illinois Bankers Life Association (Ark.), not yet reported. In that case the war risk clause exempted the insurer from liability "provided that death while in the service in the army or navy of the Government in time of war" should occur. The court very properly held that if the insured died while at a military training camp after enlisting in the U. S. Army during the late war with Germany there was no liability. But there was no further restrictive clause in that policy limiting the death while in military service to only such death as *resulted from such service* as does the policy now in question. That case, therefore, is not in point.

What we have said disposes, we think, of all the errors assigned, including those relating to the giving and refusing of instructions. The case was properly tried and all questions of fact settled by the jury. The judgment is, therefore, affirmed. *Bradley* and *Farrington, JJ.*, concur.