ELIZA BOATWRIGHT, Appellee, v. AMERICAN LIFE INSURANCE COMPANY, Appellant.

**INSURANCE: Death ''While Engaged in Military Service.''** Death during the time the insured is in training at a government naval station, preparatory to being assigned to active duty in the navy in a war then pending, but from a disease then generally prevalent among all classes of people within and without the military and naval service, is not a death *''while engaged in the military or naval service in time of war,''* within the meaning of a policy of insurance exempting the insurer from liability.

ARTHUR, J., dissents.

**PLEADING: Prayer as Basis for Judgment.** A prayer (1) for reformation, (2) for judgment on the reformed writing, and (3) for general equitable relief, authorizes judgment on the original writing, in case the court finds reformation is unnecessary.

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

DECEMBER 16, 1920.

REHEARING DENIED APRIL 6, 1921.

ACTION in equity, to reform a policy of life insurance, and for judgment thereon. The court denied reformation, but entered judgment against the defendant for the face of the policy. Defendant appeals.—*Affirmed.*

*E. B. Evans* and *Opal Boling,* for appellant.

*F. T. Van Liew,* for appellee.

STEVENS, J.—I. The policy in suit was issued in April, 1918, upon the life of Ernest E. Boatwright, who, shortly thereafter, enlisted in the navy, and in September, 1918, died of influenza, while at the naval training station at Great Lakes, Illinois. The policy contained the following provision:

1. INSURANCE: death "while engaged in military service."

"If within five years from date hereof, the death of the insured shall occur while engaged in the military or naval service in time of war, without previously having obtained from the company a permit therefor, the company's liability shall be limited to the cash premiums paid thereon for three years from date of issuance and thereafter to the legal reserve of the policy."

The plaintiff, who is the grandmother of the insured, and the beneficiary named in the policy, after the necessary formal allegations, alleged in her petition that the application for the policy in suit was prepared and delivered to the company by George A. Young, one of its agents; that, at the time of signing same, insured contemplated enlisting in the navy; and that he informed defendant's agent that he did not desire a policy at all, unless it would be effective in the event of his death while in naval training in the United States; and that he was informed by said agent that the policy applied for would be valid and enforcible so long as he remained in the United States, and until he boarded a ship for the seat of war. She further alleged that the insured would not have accepted the policy and paid the premium but for the fact, as plaintiff alleges, that he understood it would continue in force so long as he remained in the United States, and that the face of the policy would, in case of his death before boarding a ship for the seat of war, be paid to the beneficiary named. Plaintiff therefore prayed that the policy be so reformed as to be valid during the time he was at the naval training station, and for judgment thereon as reformed, and for all just and proper equitable relief. The defendant demurred to this petition, upon the grounds that it appeared upon the face thereof that the insured came to his death while engaged in the naval service of the United States in time of war, and that, under and by virtue of the terms and provisions of the policy quoted above, the company assumed no risk while the insured was engaged in the naval service in time of war, except its obligation to return the premium paid, which defendant later tendered. The demurrer was overruled, and the cause was tried upon the issues thereafter joined. The court below denied reformation of the policy, but entered judgment in favor of the plaintiff for the full amount thereof. The defendant alone appeals, so that this issue is not before us. We cannot presume

that defendant appealed from that part of the decree which was favorable to it. *Hintrager v. Hennessy,* 46 Iowa 600; *Devoe v. Hall,* 60 Iowa 749; *Frost v. Parker,* 65 Iowa 178; *Huff v. Olmstead,* 67 Iowa 598; *Smith v. Knight,* 88 Iowa 257.

The principal propositions are urged by appellant as follows: (a) That, as plaintiff in her petition asked judgment against the defendant only upon the policy when reformed, the court was without jurisdiction to enter judgment thereon without reformation; and (b) that the death of the insured occurred while he was engaged in the naval service of the United States in time of war, and that, as he entered such service without previously obtaining a permit from the defendant company to do so, the company was, by the terms of the policy, exempted from liability.

2. PLEADING:
prayer as basis
for judgment.

It is true that the prayer of plaintiff's petition is for judgment for the amount of the policy when reformed; but there is also a prayer for such "further and complete relief as to the court may seem just and equitable in the premises." No motion was made to transfer the cause to the law side of the docket for trial. There was some discussion between the court and counsel, just before the cause was submitted, from which the inference may be drawn that counsel for appellant understood that, if the court refused to reform the policy, as prayed, plaintiff's petition would be dismissed; but evidently, upon more thorough consideration of the questions before it, the court reached the conclusion that plaintiff was entitled to judgment upon the policy for the face thereof, without reformation thereof, and acted accordingly. The court, under a prayer for general, equitable relief, was authorized to cause judgment to be entered in accordance with the law and evidence. *Reiger v. Turley,* 151 Iowa 491; *Laverty v. Sexton & Son,* 41 Iowa 435; *Hoskins v. Rowe,* 61 Iowa 180; *Pond v. Waterloo Agri. Works,* 50 Iowa 596; *Thomas v. Farley Mfg. Co.,* 76 Iowa 735.

If plaintiff was entitled to recover upon the policy unreformed, then, so far as the defenses pleaded in the answer are concerned, the court would, if the cause had been tried to a jury, have been compelled to direct a verdict in plaintiff's favor, and defendant was not, therefore, prejudiced by the entry of judgment.

II. ˙ By stipulation of the parties, it was agreed, upon the trial, that the insured died on or about September 23, 1918, at the Great Lakes Naval Training Station, Great Lakes, Illinois, of influenza; that this disease was prevalent throughout the United States; and that soldiers, sailors, and civilians were attacked thereby and died therefrom; and that said disease was not confined to any particular locality or class of people; that, at the time of his death, the premiums due had been paid; that, shortly after the policy was delivered, without first obtaining permission from them to do so, he enlisted in the navy; and that, at the time, the United States was at war with certain foreign countries; that, while at the naval training camp, the insured was subject to the same military discipline and occupied barracks and tents the same as other enlisted or drafted men in training for the naval service at said station.

There is no question but that, when the insured voluntarily enlisted and took the prescribed oath, he entered the naval service of the United States government, and thereafter became subject to the orders and discipline provided for that branch of the government service. *Ruddock v. Detroit Life Ins. Co.*, 209 Mich. 638 (177 N. W. 242); *Malone v. State Life Ins. Co.*, 202 Mo. App. 499 (213 S. W. 877); *Reid v. American Nat. Assur. Co.*, (Mo. App.) 218 S. W. 957. The only question is: Was he, at the time of his death, within the meaning of the provisions of the policy quoted above, "*engaged* in military or naval service in time of war?" If so, then manifestly the judgment entered in the court below cannot be sustained. An examination of the adjudicated cases reveals some lack of harmony in the conclusions reached. However, it will be observed that the language of each contract was, in some respects, unlike that of the others.

The Supreme Court of Wisconsin, in *Kelly v. Fidelity Mut. Life Ins. Co.*, 169 Wis. 274 (172 N. W. 152), sustained a judgment· in favor of the plaintiff for the amount thereof upon a policy containing the following provision:

"Military or Naval Service, or Work in Connection with Warfare. If the insured shall, within two years from date of this policy, engage in any military or naval service, or in any work as a civilian in any capacity whatsoever in connection with actual warfare, and shall die within two years of the date of

this policy, as a result, directly or indirectly, of engaging in such service or work, the liability of the company under this policy shall be limited to the return of the premiums paid, without interest.''

In that case it appeared that the insured entered the military service in 1917, was transferred to France, and, while in the discharge of his duties in the army, which was the supervision of the construction and operation of sawmills, was accidentally killed, by being thrown against a tree, from a motorcycle which he was riding. At the time his death occurred, he was more than 100 miles from the zone of actual warfare, or from the territory occupied or invaded by the enemy. The court held that the death of the insured occurred while he was engaged in the military service, but not ''as a result, directly or indirectly, of engaging'' therein, and that, therefore, the provision of the policy was not broken.

In *Myli v. American Life Ins. Co.,* (N. D.) 175 N. W. 631, the Supreme Court of North Dakota, construing the provisions of a policy identical with the provisions of the policy in suit, sustained a recovery by the beneficiary. The insured died of influenza, while in a naval training station at Minneapolis. The court held that, as the insured was not subject to any of the hazards of war, and had not been assigned to special service, but was only in training therefor, he was not, within the meaning of the policy, ''engaged in the military or naval service'' of the United States.

The language of the policy considered by the Supreme Court of Michigan, in *Ruddock v. Detroit Life Ins. Co.,* supra, was as follows:

''This policy and the application therefor, a full and true copy of which is hereto attached, shall constitute the entire contract between the parties hereto. It is unrestricted as to travel, residence, or occupation, and shall be incontestable after one year from date, except for nonpayment of premium and except for naval or military service in time of war, without a permit, which are risks not assumed by the company; provided that, in case of the death of the insured while engaged in such service, without a permit, the amount payable hereunder shall be the reserve on the policy at date of death. Military and naval service

in time of war shall be construed to include work as a civilian in any capacity whatever in connection with actual warfare."

The insured, after entering the military service, died at Camp Custer, of pneumonia. The court held that, as the insured had *entered* the military service, no recovery could be had. The specific language construed by the court in this case was: "If I shall *enter* or be engaged in such service," recovery would be limited to the net reserve held against the policy.

In *Miller v. Illinois Bankers' Life Assn.*, 138 Ark. 442 (212 S. W. 310), the Supreme Court of Arkansas held that the defendant was not liable upon a policy containing the following clause:

"It is expressly provided that death while in the service in the army or navy of the government in time of war is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the company thereon."

In that case, the death of the insured resulted from pneumonia, while stationed at Camp Beauregard, Louisiana. But in *Benham v. American Cent. Life Ins. Co.*, (Ark.) 217 S. W. 462, which was a suit upon a policy providing that "death while engaged in military or naval service in time of war, or in consequence of such service, shall render the company liable for only the reserve under this policy, unless the company's permission to engage in such service shall have been obtained and such extra premium or premiums as the company may require shall have been paid," the same court held that plaintiff was entitled to recover, although the death of the insured occurred while in the military service in time of war, from influenza, at Camp Dick, Texas. The court, in the course of its opinion, said:

"The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means 'to take part in.' To illustrate: 'A servant injured while in the operation of a train,' means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So, here, the words 'death while engaged

in military service in time of war' mean death while doing, performing, or taking part in some military service in time of war; in other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service, due to causes entirely or wholly unconnected with such service. This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word 'engaged,' it must have been intended that some activity in the service should have caused the death, in contradistinction to merely a period of time while the insured was in the service. This view is strengthened when we consider the words following. The words 'or in consequence of such service' relate to the word 'death,' so that death in 'consequence of such service' means death resulting from some act of the insured connected with the service, whether such death occurred during the period of his service or afterwards.''

In *Malone v. State Life Ins. Co.*, 202 Mo. App. 499 (213 S. W. 877), the Springfield, Missouri, court of appeals affirmed a judgment against the defendant for the amount of a policy which provided:

''If within five years from the date of this policy the insured shall engage in any military or naval service in time of war (death from submarine or aviation service, connected with actual warfare, as a part thereof, is a risk not covered by this policy), the liability of the company in event of the death of the insured while so engaged, or within six months thereafter, as a result of such service, will be limited to the return of the premiums paid hereon, exclusive of any extra premium paid for military or naval service, less any indebtedness to the company hereon.''

The death of insured occurred while he was in the military service at Jefferson Barracks, Missouri, from the accidental discharge of a gun in the hands of a fellow soldier. The court held that, as his death was not the result of his services in the army, the provision quoted did not relieve the company from liability. The same court, in *Reid v. American Nat. Assur. Co.*, (Mo. App.)

218 S. W. 957, reversed a judgment in favor of the plaintiff in a suit upon a policy containing the following provision:

"Notwithstanding anything herein to the contrary, if the insured shall die or become disabled while engaged in naval or military service in time of war, or in consequence of such service, the amount payable and the liability of the company hereunder shall be limited to an amount equal to the net reserve hereon calculated according to the American Experience Table of Mortality with interest at the rate of three and one half (3½) per cent per annum. After one year from the date of this policy, this condition will be waived, if the insured immediately before engaging in such naval or military service shall pay to the company at its home office an extra cash premium; such extra premium shall be payable annually in advance during the term of such service, and shall be seven and one half (7½) per cent of the face of this policy."

The insured died of pneumonia, at a hospital in Raleigh, North Carolina, after he had been assigned to Company 13, 163d Depot Brigade, at Camp Polk, North Carolina. The court held that, at the time of his death, he was engaged in the military service, and gave no special significance to the words "or in consequence of such service," found in the clause quoted.

The provision of the policy construed by the Missouri court of appeals in *Slaughter v. Protective League Life Ins. Co.*, (Mo. App.) 223 S. W. 819, was as follows:

"The death of the insured while engaged in military or naval service in time of war is a risk not assumed under this policy, and in such event the company will return all the premiums actually paid to the company hereunder."

The insured died in France, after the armistice was signed. The court followed its holding in *Reid v. American Nat. Assur. Co.*, supra, and declined to accept the effect given to the word "engaged" by the Arkansas court in *Benham v. American Cent. Life Ins. Co.*, supra.

As appears from the extract from the policy in suit in each of the cases cited, there is considerable diversity in the language thereof, and the conclusion of the court in several of the cases is based upon language materially different from that of the policy in controversy. The rule is universal that the pro-

visions of an insurance contract are to be construed most strongly against the insurer. Words must not, however, be given a strained or unusual meaning, in order to effect liability. The provision of the policy exempts the defendant from liability if the death of the insured occurred while he was engaged in the military or naval service of the government in time of war. It is conceded that the defendant enlisted in the navy shortly after the policy was applied for, and that he died of influenza, while in the service at the government naval training station at Great Lakes, Illinois. He had not, at the time, been assigned to duty in the navy, and his occupation was not necessarily more hazardous than that in which he was engaged at the time the application for the policy was signed, which was that of farmer and driver of a dairy wagon. At the time of his death, an epidemic of influenza extended over a large part of the United States, and it was nearly, if not quite, as common among civilians as among those in training at the naval station referred to, or the various camps throughout the country. That the provision of the policy in question was inserted therein as a protection to the insurer against the extraordinary hazards of war is, of course, obvious. The insured, at the time of his death and at all times after he enlisted in the navy, was thousands of miles from the zone of actual warfare, and many hundred miles from the high seas. He had assumed none of the hazards of naval warfare. In the sense that he had pledged or obligated himself to perform whatever service he might be called upon to perform, and that he was bound to observe the rules and discipline of the navy, he was engaged in the naval service. He had entered the naval service of the United States in time of war. He had not, however, taken part in any of the movements of the navy; had not been present when it was engaged in a conflict with the enemy or other action; but was pursuing a course of instruction, preparatory to being assigned to some active duty in the navy.

Except *Myli v. American Life Ins. Co.* and *Benham v. American Cent. Life Ins. Co.,* supra, none of the cited cases are squarely in point on the proposition before us; and in the latter case, in which the liability of the company was sustained, the court gave considerable significance to the words "in consequence of such service," found in the exemption clause. We

are of the opinion that the insured was not, at the time of his death, which occurred at the Great Lakes Naval Training Station, a point remote from the war zone and from the high seas, and at a time when his occupation was not more hazardous than at the time the policy was issued, engaged in the naval service of the United States, within the meaning of the clause in question, although this country was, at the time, at war with the Central European powers; and that the exemption does not apply.

It follows that the judgment of the court below must be and is—*Affirmed.*

WEAVER, C. J., LADD, PRESTON, and SALINGER, JJ., concur.

ARTHUR, J., dissents.