LYDIA FELLERS, Appellant, v. MODERN WOODMEN OF AMERICA, Appellees.

**INSURANCE:** Life Insurance—Policy—Construction—Death While 1 Engaged in Exempted Occupation—Proximate Cause. A policy of life insurance which wholly exempts the insurer from liability for death *"directly traceable to employment"* in a named hazardous occupation, has no application to a death from causes *not traceable to the peculiar hazards* of such hazardous occupation as the proximate cause of the death, even though, at the time of death, insured was actually *engaged in* such hazardous occupation.

PRINCIPLE APPLIED: A policy exempted the insurer from liability for death "directly traceable" to employment as a lineman for an electric company. The insured, *at the time of his death*, was engaged as a lineman for an electric company. He and a fellow workman were on a platform which was on top of a trolley car. They were engaged in placing a steel wire in position. To do this, one workman was prying the wire into position, while deceased was preparing to fasten it after it was so pried into position. From some unexplained reason, the trolley pole slipped from the trolley wire and hit the workman holding the pry and caused him to drop the pry. This released the wire which deceased was preparing to fasten, and it sprang back, hit and overbalanced deceased, and he fell to the ground and was killed by striking his head upon a steel rail of an adjoining track.

In an action on the policy, verdict was directed for the insurer.

*Held*, error, because at least a jury question was presented on the question of proximate cause.

**INSURANCE:** Actions—Defenses—Excepted Causes—Burden of 2 Proof. The defense that death occurred from causes *excepted* by the policy must be established by the insurer by a preponderance of the evidence.

·*Appeal from Black Hawk District Court.*—GEORGE W. DUN-
HAM, Judge.

DECEMBER 18, 1917.

SUIT upon a certificate of insurance. Defense that
decedent engaged in a prohibited occupation, and that,
though this did not cancel the certificate, it relieved defend-
ant from liability for injuries directly traceable to being en-
gaged in the prohibited occupation. Reply that defendant
has waived and is estopped to urge said defense, and that
the injury was not directly traceable to said occupation.
Verdict directed for defendant. Plaintiff appeals.—*Re-
versed and remanded.*

*Hughes, Sutherland & Taylor,* for appellant.

*Pike & Sias* and *George G. Perrin,* for appellees.

1. INSURANCE:
life insur-
ance: policy:
construction:
death while
engaged in
exempted oc-
cupation:
proximate
cause.

SALINGER, J.—I. Decedent changed his
occupation from that of a common laborer
to that of an electric lineman for an elec-
tric railroad. This worked that, unless cer-
tain prescribed steps were taken, defendant
was under no liability on account of the
death of the insured "directly traceable" to this new em-
ployment. None of the steps aforesaid were taken, but the
plaintiff claims that failure to do this has been waived,
and that the defendant is estopped to urge this change of
occupation. The trial court held that, as matter of law,
neither waiver nor estoppel has been shown.

II. The defendant may be liable for the death of as-
sured though he did change to a prohibited occupation, did
not take the steps necessary to cover death from the haz-
ards of that occupation, and though there be no estoppel to
urge the change in occupation. The defendant concedes this
much, because it urges as one reason why there is neither
waiver nor estoppel that the certificate so remained in force

as that receiving and retaining of dues and assessments worked no waiver. If, then, the decedent came to his death in such manner as that the defendant is liable upon that part of the certificate which remained alive despite the change of occupation, the court erred in holding that plaintiff might not recover. The only effect of the change in occupation was to relieve the insurer from liability for injuries "directly traceable to employment in  *  *  *  such occupation." For the purposes of this case, the defendant is responsible unless the injuries were thus

2. INSURANCE: actions: defenses: excepted causes: burden of proof.

traceable. The burden of establishing that death is due to causes excepted by the contract is upon the insurer. *Vernon v. Iowa St. Trav. Men's Assn.*, 158 Iowa 597; *McClure v. Great Western Acc. Assn.*, 141 Iowa 350; *Barnabus v. Bersham Colliery Co.*, 103 L. T. R. 513. This burden is not discharged by merely showing a state of facts which is equally consistent with the claim that the injury is proximately due to the hazardous employment or with its not being due thereto. *Eisentrager v. Great Northern R. Co.*, 178 Iowa 713; *In re Savage*, (Mass.) 110 N. E. 283. The defender must make it appear by a preponderance that the injury had some causative connection with the peculiar hazards of the prohibited employment; that it was peculiarly due to that employment; and that these peculiar hazards are the immediately proximate cause of the injury. Has the defendant discharged that burden? Has it been shown by a preponderance that what happened to the decedent was caused by his being a lineman; that he might not have been injured as he was if he had not engaged in that occupation, but had remained in one which the certificate of insurance did not except?

How the decedent came to his death is brought before us by stipulation. He, together with one Albert Waring, were working together on top of a platform, which plat-

form was on top of a trolley car. The two were in the act of placing in position a steel trolley wire for the common employer. In order to place said wire in proper position, it was necessary to pry it into that position. To do this Waring used a wooden pry, and was in the act of forcing the wire into position. Decedent was in the act of fastening the gripping to said wire to hold it in position after it had been pried into same by Waring. While the two were so acting, the trolley pole of the car flew off from the trolley wire with which it had been connected; as it flew off, it struck Waring and caused him to let go of the pryer; this released the trolley wire, which flew back, struck decedent, caused him to lose his balance and be hurled to the ground. Falling to the ground, decedent struck his head on a rail of an adjoining track, crushing his skull and thereby causing his death.

Was the court justified in holding, as matter of law, that this death was "directly traceable to employment" as such lineman? The exception in this contract is, for the purposes of construction, a species of forfeiture,—not in the strict sense that engaging in a prohibited occupation cancels the certificate, but in the sense that being so engaged denies a right to recover which would otherwise exist. Construing the exception in that view, its reasonable meaning is that there shall be no liability if death results, not while at work as a lineman, but because doing the proper work of a lineman caused the injury. Though decedent was at work as a lineman, defendant would not be released had he been killed by a stray bullet from one who was hunting in the neighborhood. That a drunken man falls from a scaffold while working as a lineman would not suffice. The same injury might occur if a common laborer, working as such upon a scaffold, fell from the same because he was drunk. The injuries within the reasonable contemplation of the exception here are such as would arise

from touching a live wire, from being tripped by a wire that is being handled either in erection, repair, taking down, and the like. The injury in this case seems to us to be in no way directly traceable to the occupation of the decedent, and we think the only relation the injury had to the employment is that it occurred while such employment was being pursued. The injury did not arise because of some attribute of the trolley wire as such, but because a colaborer, being struck by such wire, fell, in falling struck decedent, and caused him to be hurled to the ground and hurt by the impact. Eliminate the fact that this occurred while both were working as linemen, and you have no injury directly traceable to the occupation; because handling any wire in any occupation, and having such wire strike one of the handlers and precipitate him upon the other, might do to that other just what was done here. What happened to him could happen no matter what his occupation was, if he and a fellow servant were engaged in prying or otherwise dealing with a wire on a tension. Supposing these two men had been at work on a high platform, trying to compress hay by hand pressure, and by means of encircling it with a wire, at the respective ends of which each pulled to the extent of his strength; had the wire snapped under that tension, either or both having hold of the ends, he could and would have been precipitated from the platform, and might have been injured as decedent was.

### 2-a.

Doing a prohibited thing does not absolve the insurer, unless some causative connection between the acts and the injury to assured be shown. *Jones v. United States Mutual Acc. Assn.*, 92 Iowa 652. This, though insured was in a place where, by the terms of the policy, he was not permitted to be. *Kirkpatrick v. Aetna Life Ins. Co.*, 141 Iowa 74.

It is said in *Fitzgerald v. Clarke*, 2 K. B. (1908) 796, that, for an accident to arise out of and in the course of the employment, it must result from a risk reasonably incident to the employment; that "out of" involves the idea that the injury is in some sense due to the employment. We have so fully dealt with this proposition in *Griffith v. Cole Bros.*, 183 Iowa — that little needs to be added here. In *Rodger v. School Board*, (Reports, 1912) 1 Scots Law Times 271, Lord Johnston said, in a concurring opinion, that the death of deceased was occasioned by a fall in the street and the resulting personal injury, while he was returning from conveying a message on the business of his employer; wherefore, of course, he met injury by an accident in the course of his employment. But, it is said, the accident was not merely the fall, but the violent contact of the head with the stone pavement, which was a part and parcel of the fall and caused concussion; that, therefore, "the immediate cause" of the personal injury or concussion was the fall and consequent blow.

"The immediate cause of the fall and, therefore, the remote cause of the injury, was giddiness or faintness. * * * The still more remote cause of the injury was the excessive heat of the day, acting on a man of three score, in normal health."

It is held the accident did not arise out of the employment, because "we are only concerned with the immediate or proximate cause of the personal injury." In *Robson v. Blakey*, 5 B. W. C. C. 536, it is said the inquiry is, what is the *causa causans?* and "we all know that July, 1911, was a hot month; but to say that anyone who works, as it has been called, 'neath the baleful star of Sirius' is necessarily exposed to excessive or peculiar danger, is a proposition which has no foundation." And in *State v. District Court*, (Minn.) 153 N. W. 119, that being exposed to injury from an occupation means something more than the normal risk

to which all are subject, and means at least that the employ-
ment necessarily accentuated the natural hazard attendant
upon work done in the course of the employment.   In *Rob-
son v Blakey*, 5 B. W. C. C. 536, the Lord President said:

"To what class of dangers does this man's employment
expose him?   *   *   *   Suppose  he is a collier, I may say
his employment exposes him to the risk of having things
falling upon him from the roof, to the danger of tumbling
down a shaft, and so on.   In short, there is a peculiar class
of dangers which exists only for people who go down
into mines *  *  *.   The sandwich man who goes about
the streets all day   *   *   *   is not allowed to go onto
the pavements;  and he is exposed on the streets to the
danger of being run over by wheeled traffic.   But if you had
asked this, What are the special dangers incidental to the
employment of a plumber who occasionally has outdoor
works?   nobody in their senses would have said, 'Oh, heat
apoplexy.' "

Many accidents may happen to a workman "in the
course of employment" for which his employer would incur
no liability;  for example, a servant engaged in a foundry
yard in the course of his employment, if struck by lightning
and seriously maimed, would have no claim for compen-
sation under the act.   *Falconer v. London & G. E. & I.
Shipbuilding Co.*, 3 Court of Session Cases (5th Series)
564.   It is said in *Hopkins v. Michigan Sugar Co.*, (Mich.)
150 N. W. 325:

"An employee may suffer an accident while engaged
at his work or in the course of his employment which in
no sense is attributable to the nature of or risks involved in
such employment, and therefore cannot be said to arise out
of it.   An accident arising out of an employment almost
necessarily occurs in the course of it, but the converse does
not follow."

In *Craske v. Wigan*, 2 B. W. C. C. 35, it is held that

it would be dangerous to depart from what has been deemed the invariable rule of the court, to wit:

"That it is not enough for the applicant to say, 'The accident would not have happened if I had not been engaged in this employment, or if I had not been in that particular place.' The applicant must go further, and must say, 'The accident arose because of something I was doing in the course of my employment or because I was exposed by the nature of my employment to some pecular danger.' "

All that *House v. Modern Woodmen of America,* 165 Iowa 607, at 609, comes to, is that it was contended:

"The substance of the contention in support of the demurrer was and is that to apply the amendment (creating prohibited occupations) to the prior certificate would be to impair the obligation of the contract and to interfere with the vested right of the certificate holder, and that such amendment was for such reason unreasonable;" and we held that this contention was not tenable.

We do not have the question of whether plaintiff is entitled to recover, as matter of law. What we decide is, the trial court should not have held as matter of law that the injuries to defendant were directly traceable to his employment as a lineman.

III.    The conclusion reached makes it unnecessary, if not improper, to pass upon whether defendant has estopped itself to assert the change in occupation. If plaintiff may recover though there was no estoppel, whether there was one might become a moot question.—*Reversed and remanded.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.