## CHARLESTON.

IRENE NOWLAN *v.* GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.

Submitted April 20, 1921.  Decided April 26, 1921.

1. INSURANCE—*Provision Limiting Liability in Case of Death of Insured While Engaged in Military or Naval Service Held Valid.*

   A provision in a policy of life insurance that in case the insured engages in military or naval service, and dies while so engaged in such service, or in consequence thereof, the insurer will only be liable for a certain proportion of the full indemnity fixed by the policy, is valid and binding; and in case the insured is killed while engaged in such military service the beneficiary will only be entitled to recover the proportion of the full indemnity fixed by such provision. (p. 567).

2. SAME—*Provision in Life Policy Limiting Recovery Where Insured Dies While Engaged in Military or Naval Service Held Applicable Whether Insured Enters Service Voluntarily or Under Selective Service Act.*

   A provision in a policy of life insurance that if the insured shall engage in military or naval service in time of war, and shall die while engaged in such service, or in consequence thereof, the beneficiary will only be entitled to recover a certain fixed proportion of the full indemnity provided by the policy, applies, whether the insured entered such service voluntarily or was inducted therein under the Selective Service Act. (p. 567).

Error to Circuit Court, Logan County.

Action by Irene Nowlan against the Guardian Life In-

surance Company of America.    Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*Brown, Jackson & Knight*, for plaintiff in error.

*Butts & Minter*, and *W. V. McNemar*, for defendant in error.

RITZ, PRESIDENT:

On the 29th, day of January, 1917, William Raymond Nowlan made application to the defendant for insurance on his life in the sum of two thousand dollars, designating therein his mother, the plaintiff, as his beneficiary.    Upon this application the defendant, on February 2, 1917, issued its policy for said amount.    On the 8th day of May, 1917, the insured, contemplating entering the officers' reserve training camp at Fort Benjamin Harrison, made application to the insurance company for a permit to engage in the military service, and in response to his letter the defendant company wrote him on May 10th enclosing him a form which he was requested to fill up and return to the company, by the terms of which, if the privilege had been granted, he would have been allowed to enter the military service outside of the United States on the payment of an additional premium of fifty dollars a year for each thousand dollars of insurance. He was not accepted, however, for the officers' reserve training camp, and did not fill up this application, for which reason the insurance company never issued to him any authorization to enter the military service.    He was within the age prescribed by the Selective Service Act, and on the 10th of May, 1918, he was drawn for military service, and was ordered to entrain on the 25th day of that month.    On the 14th of May, however, he enlisted in the Auto Mechanical Department of the army in preference to waiting and leaving with the contingent drawn for the 25th.    He remained in the military service until the 28th of October, 1919, when he died in France as the result of wounds received in action while engaged as a private in Battery B, 10 Field Artillery, A. E. F.

In the application made by Nowlan for this policy there was contained this provision: "I further agree that if during the first two years of the existence of the policy which the Company may issue upon the application hereby made, I shall engage in military or naval service in time of war and shall die within the said two years while engaged in such service, or in consequence thereof, the Company's liability shall be limited as follows: to one-tenth (1--10) of the face amount of the policy during the first of said two years; to one-fifth (1-5) of the face amount of the policy during the second of said two years." And in the policy issued pursuant to this application there was a like provision in the following language: "If, during the first two years of the existence of this policy the insured shall engage in military or naval service in time of war and shall die within the said two years while engaged in such service or in consequence thereof, the liability of the Company shall be limited as follows:  to one-tenth (1-10) of the face amount of the policy during the first of the said two years; to one-fifth (1-5) of the face amount of the policy during the second of the said two years." Upon proper proof of death being made to the insurance company it paid to the beneficiary the sum of four hundred dollars, being one-fifth of the indemnity provided by the policy, its contention being that by the terms of the provision aforesaid Nowlan, having been killed in the military service during the second year of the policy it was only liable for one-fifth of the full indemnity therein provided. This suit was then brought by the beneficiary for the purpose of recovering the full indemnity provided in the policy. The case was tried by the court in lieu of a jury upon an agreed statement of facts, which is as above recited, so far as pertinent to the questions here raised.

The sole contention of the plaintiff is that she is not barred from recovering the full amount of the policy sued on by reason of the stipulations above recited. She says that that condition only operated to reduce the indemnity in case the insured voluntarily entered the military service, and that inasmuch as his service in the army was involuntary the

company is liable for the full indemnity provided by the policy. She insists that at the time the policy was written the Selective Service Act had not been passed; that in fact this country was not at that time engaged in war, and that the parties did not contemplate any such thing as involuntary military service, but only such service of that character as the insured entered upon of his own will. And it is also claimed that the provision in regard to the reduced indemnity is ambiguous in this regard, and that being so it should be most strongly construed against the insurance company and in favor of the insured. There is no doubt as to the correctness of this rule of construction, but before the courts can resort to construction there must be some ambiguity or uncertainty in the contract. Is there such uncertainty or ambiguity in this contract? The plaintiff's contention that the parties could not at the time contemplate involuntary military service is hardly tenable, even if we could resort to such aids in construing language unambiguous upon its face. The insured was a citizen of the United States. The United States was not then at war with any foreign country, and while it may be true as stated that many American citizens were enlisting in the armies of different countries then engaged in war in Europe, it cannot be said that the parties to this contract contemplated any such service, for it is doubtful whether such an enlistment could be effected without a violation of the neutrality laws of the country. Certainly it can be argued with as great force that at the time this policy was written it was contemplated by at least very many people that the United States would become a participant in the European war. But even assuming that neither of the parties contemplated that the United States would enter the war, still it may be said that both of them knew that such a contingency might arise, and in case it did the government would have a right to call upon any or all of its citizens for military service, and require that service of them whether they desired or were willing to render it or not. It occurs to us, however, that the language used in this contract is perfectly clear, and is

not susceptible of any two reasonable constructions.    It is well known that insurance companies base their premiums upon the risks insured.    The premium collected by the company, after deducting the expense of administration, is invested, and if the expectancy of life of those to whom policies are issued is correct, and each party meets the expectations of the company in that regard, the insured would simply get back the money he put in with its earnings, less the cost of administration.    It is well known, however, that many people who are insured die long before the time fixed by their expectancy of life, and the amounts that are paid in such cases in excess of the premiums and earnings must be made up from like premiums collected from those who exceed the span of life allotted to them.    Of course, the expectancy of life of one engaged in war is different from that of one engaged in more peaceful pursuits, and it necessarily follows that the risk taken by the insurance company is therefore increased, and in order to make the same return to such a party a larger premium must be charged.    The premium charged is based upon the risk assumed.    One fifty years old is required to pay a higher premium than a man forty years of age, for the reason that it may be expected that he will not live as many years as a younger man, and so one engaged in a dangerous pursuit, such as carrying on war, is required to pay a much higher premium than one engaged in some pursuit not attended with such great risk to life.    In this case the insurance company offered the insured the opportunity of paying an additional premium and carrying the full amount of the policy.    He did not avail himself of this offer.    Under the terms of the policy itself it is provided that this difference in risk would be made up by decreasing the indemnity upon engaging in the more hazardous occupation.    We do not think there    is force in the plaintiff's contention that the language of the contract, that if the insured engaged in military or naval service he shall only receive the decreased indemnity, means a voluntary engagement in such service.    Manifestly this provision was put in to relieve the insurance company of the obligation  to

pay the full indemnity for a more hazardous occupation than that on which the premiums paid were based. The hazard or risk from engaging in war would be just as great whether entered upon voluntarily or involuntarily, and there is no reason in the world for applying the limitation in one case that does not exist with equal force for its application in the other. Nor can we say that the language imports any such meaning. The word "engage" means to take part in or to be employed in, however the employment may arise, and to attribute to this language the meaning claimed for it by the plaintiff would be reading into the contract something which the parties have not put there, and this is not the purpose of construction. In the case of *Ruddock* v. *Detroit Life Ins. Co.,* (Mich.) 177 N. W. 242, a war clause somewhat similar to this was involved, and the court held that it could not differentiate between voluntary and involuntary service; that this would be reading into the policy something which the parties had not put there themselves. A similar provision was construed in *Mattor* v. *New England Mutual Life Ins. Co.* (Ga.) 103 S. E. 180. There are other cases in which clauses providing against military service in insurance policies have been construed, and held to be valid and binding obligations upon the parties, and that the beneficiary, in the case of death in such military service, is only entitled to recover in accordance with the limitation prescribed in such clause. *Nutt* v. *Security Life Ins. Co. of America,* (Ark.) 218 S. W. 675; *Reid* v. *American National Assurance Co.* (Mo.) 218 S. W. 957; *Miller* v. *Illinois Banker's Life Association,* (Ark.) 212 S. W. 310; *Slaughter* v. *Protective League Life Ins. Co.,* (Mo.) 223 S. W. 819; *Benham* v. *American Central Life Ins. Co.,* (Ark.) 217 S. W. 462.

Our conclusion is that the beneficiary in this policy was entitled to receive only one fifth of the full indemnity provided therein, and this amount having been paid to her by the insurer it follows that she is entitled to no recovery in this case.

We will, therefore, reverse the judgment of the circuit court; set aside its findings upon the agreed statement of

facts; find for the defendant thereon; and enter judgment accordingly.

*Reversed and rendered.*