C. L. SWANSON, Administrator, Appellee, v. PROVIDENT INSURANCE COMPANY et al., Appellants.

INSURANCE: Life Insurance—Provision in re Military Service. A policy provision which provides for a limited liability ''if the insured engage in military * * * service outside the continental limits of the United States in time of war, or within the United States in resisting invasion or insurrection, and death occur during such engagement, or as a result thereof within one year of discontinuance of said engagement or service,'' applies when the insured dies while serving as a soldier in a foreign country, even though his death was not due to a *hazard peculiar to war.*

PRESTON, J., dissents.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

JUNE 23, 1922.

ACTION at law, to recover upon a policy of life insurance. There was a trial to the court, which rendered judgment for the plaintiff, and defendants appeal.—*Reversed.*

*W. K. Whitfield* and *Casper Schenk,* for appellants.

*Roberts & Webber,* for appellee.

WEAVER, J.—On January 8, 1914, the defendant Provident Life Insurance Company issued its policy upon the life of William Swanson for the sum of $2,000. This company was later

absorbed by the Standard Life Insurance Company, which assumed the liability of its assignor upon said contract. The insured died in France in the military service of the United States on October 3, 1918, and this action is brought by the administrator of his estate, to recover upon the policy.

There is no dispute concerning the essential facts. As will be noted from its date, the policy was issued some three years before the United States became a party to the so-called "World War" with Germany. In the form in which it was issued, the policy, among other things, provided as follows:

"This policy is issued and accepted subject to all of the conditions, benefits, and privileges stated on the subsequent pages hereof. * * * If the insured at any time engage in military or naval service in time of war (militia or National Guard not in active service excepted) and death shall occur during such engagement or as a result thereof, the liability hereunder shall be limited to the cash surrender value of the policy at the date of death, unless the insured shall have obtained the company's written consent and paid the extra premium therefor, at its established rate."

On February 1, 1918, the United States being then involved in said war, and the insured person, William Swanson, being liable to be drafted into the military service, he made application to the insuring company for, and obtained, the substitution of a new war service clause, in lieu of the one just quoted from his policy. The application being granted, the substituted clause was executed, and was attached to and became a part of the contract of insurance. That clause was in the following words:

"If the insured engage in military, naval, or Red Cross service outside the continental limits of the United States in time of war, or within the United States in resisting invasion or insurrection, and death occur during such engagement, or as a result thereof within one year of discontinuance of said engagement or service, the company's liability hereunder shall be limited to the sum of all premiums that have actually been paid, together with 5 per cent compound interest thereon from date of payment."

In May of the same year, deceased was inducted into the military service of the United States, and after two or three months of such service at army posts in this country, he was transferred to France, where he served as bugler in Company H of the 349th United States Infantry, and continued in that capacity during the remainder of his life. He was not wounded or killed in action, but died of pneumonia, contracted after his arrival in France. Stated otherwise, it is conceded that, at the time of his death, and for about 60 days prior thereto, deceased was in France in said military service of the United States in time of war between the United States and Germany, and at the time of his death was still in said military service, outside of the continental limits of the United States, in time of war.

I. The sole question in the case before us is whether the liability of the insurer upon the policy in suit is governed by the last quoted military service clause of the contract, which limits the recoverable insurance to the sum of all the premiums actually paid, with compound interest thereon at 5 per cent from the date of payment, or is such liability to be measured by the full amount of the indemnity named in the policy? It cannot well be denied that the insurer's liability is to be measured by the terms of the contract. If the parties so agree, it is entirely competent to provide in the policy that the insurance shall be effective only while the insured continues to live in a certain locality, or shall become void or be suspended if the insured shall, without consent of the insurer, extend his travels beyond a given parallel of latitude, or shall expose himself to the perils of the sea by an ocean voyage. It is not material that the court shall see any good reason for these restrictions or limitations; it is enough that the parties have treated them as sufficiently material or desirable to embody them in their contract; and in the absence of some controlling statutory rule to the contrary, the courts give them effect according to their terms. Had the parties to the contract in suit so agreed, and had the policy provided that the insurance should at once become void and of no effect if the insured should thereafter enlist

or be drafted into the military service, we could not do otherwise than hold that no recovery of the indemnity was legally possible. If this be true, it can be no less true that it was competent for the insurer and insured to agree that, if the death of insured should occur under certain specified conditions, the indemnity payable should be limited by some measure less than the full face of the policy. The substituted military service clause of this policy was concededly a voluntary agreement, made with express reference to the fact that a state of war then existed, and the probability that the deceased would be called into the service, and that in such service he was subject to be called beyond the continental limits of the United States, where he would be exposed to greater hazards than would ordinarily be the case if he remained in this country, far removed from the scene of active hostilities. Even if the reasonableness of the agreement were open to review by the court, it could not well be condemned on that ground. Assuming, as we think we must, that the substituted military service clause is a valid provision of the insurance contract, we have then to ask whether the admitted circumstances of the death of the insured require the court to assess the recovery for the benefit of his estate upon that basis. Returning to the language of said clause, to ascertain the precise condition upon which the company's liability is to be limited to a return of the premiums paid, with interest, we find it in the following words:

"If the insured engage in military, naval, or Red Cross service outside the continental limits of the United States in time of war, *or* within the United States in resisting invasion or insurrection, and death occur during such engagement, or as a result thereof within one year of the discontinuance of such engagement or service, the company's liability hereunder shall be limited," etc.

Note that the conditions are in the alternative, and need not be in any sense cumulative, in order to bring the provision into effect. It applies: (1) To the death of the insured if it occur during his engagement in the military service outside the continental limits of the United States; *or* (2) to his death in mili-

tary service within the United States, in resisting invasion or
insurrection; *or* (3) to his death within one year after such serv-
ice is discontinued, and as a result of such service. Now, of
the several contingencies the occurrence of either of which would
call for an application of the limiting clause, all but one may
be eliminated; for the insured did not die in the military service
resisting invasion or insurrection in the United States, and he
did not die within a year after his service was discontinued, but
he did engage in the military service outside the continental
limits of the United States, and his death did occur during such
engagement; and unless we are to assume authority to remake
or to destroy the contract freely made by the parties, where
neither fraud nor mistake is charged or proved, we discover no
way of avoiding the conclusion that plaintiff's recovery must be
limited by its terms to a repayment of the premium paid, with
the stipulated interest.

II.   Considerable reliance is placed by the appellee upon
the decision of this court in *Boatwright v. American Life Ins.
Co.*, 191 Iowa 253. We think, however, that a clear distinc-
tion exists between that precedent and the case at bar. While
Boatwright had enlisted in the navy, he was still in the train-
ing school, and, as pointed out in the opinion, had not been as-
signed to any duty in the naval service when he sickened and
died; and following the established rule of interpretation of
insurance contracts, we construed the language most strongly
against the insurer, and held that the deceased was not engaged
in the military or naval service, within the meaning of the policy.
This court is not disposed to retreat from the position there
taken, but it is a border-line case, beyond which we cannot go
without introducing confusion into the law upon the subject.
In the case at bar, no question is made that deceased was en-
gaged in the military service of the United States, and had
been in such service overseas for some two months; and that he
died in such service stands admitted. This, as we read it, ful-
fills literally the condition of the contract upon which the limited
liability was predicated.

III.   It is sought to avoid this result by the argument that,

to give the death of the insured in France the effect claimed for it by the defendant, it is not enough to show that he died while in the service, but it must further appear that his death was the result of some hazard peculiar to war; and that since he died of pneumonia, a disease of common occurrence in civil life, the restricted clause of the policy has no application. That the parties might have made a contract to that effect, there can be no doubt; and if this policy were of that character, or were so ambiguously or uncertainly expressed as to be fairly capable of such construction, we should have not the slightest hesitation in giving it effect, and permitting the representative of the dead soldier to recover the full face of the policy. But an insuperable obstacle to such a result is found in the fact that the language of the agreement is incapable of such construction.

Turning still again to the restrictive clause, we find that the first and unequivocal condition for application of the limited liability is the engagement of the insured in military service outside of the continental limits of the United States, and the occurrence of his death "during such engagement." This is followed by the disjunctive "*or*," which introduces other conditions which shall have like effect to limit the insurer's liability, but which in no manner add to or take from the effect of the first condition. These other conditions do not enter into the question presented by the issues in this case, and the contract may be read as if they were omitted entirely. Much effort is made, however, to tack the words "as a result thereof" to the condition first expressed, and thereby support the theory just referred to, that, to call the restrictive clause into effect, it must appear that the death of the insured was the result of the peculiar hazards of war. A careful reading of the entire clause makes it perfectly clear that these words are not used with any such meaning. The entire expression is that the limitation is to apply "if death occur during such engagement" in the military service outside of the territorial limits of the United States, "*or* as a result thereof within one year of the discontinuance of said engagement or service." In other words, the limitation is to apply if the death occur *during* such service,

or if it occur after such service and as a result thereof, within a year from its termination. If the insured died in the service outside of the United States (as it is agreed that the deceased in this case did), the words "as a result thereof" have no application to his case.

We do not undertake a review of the somewhat numerous precedents which have been cited for our consideration. This case turns entirely upon the proper construction of the language of the contract, and this seems to us so clear and explicit as to leave little room for debate and little occasion for the array of authorities. As having some bearing upon the conclusion we have expressed, see *Nowlan v. Guardian Life Ins. Co.,* 88 W. Va. 563 (107 S. E. 177); *La Rue v. Kansas Mut. L. Ins. Co.,* 68 Kan. 539 (75 Pac. 494); *Sandstedt v. American Cent. L. Ins. Co.,* 109 Wash. 338 (186 Pac. 1069); *Bradshaw v. Farmers & B. L. Ins. Co.,* 107 Kan. 681 (193 Pac. 332); *Malone v. State Life Ins. Co.,* 202 Mo. App. 499 (213 S. W. 877); *Miller v. Illinois Bankers' Life Assn.,* 138 Ark. 442 (212 S. W. 310).

Other questions suggested in argument are governed by the conclusions already announced, and need not be here discussed. It follows of necessity from the views hereinbefore expressed that the trial court erred in entering judgment for the plaintiff. The judgment will be reversed and cause remanded for further proceedings not inconsistent with this opinion.—*Reversed and remanded.*

STEVENS, C. J., EVANS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

PRESTON, J. (dissenting). The case was tried on an agreed statement of facts. The policy was issued by the defendant Provident Life Insurance Company, which was engaged in the business of life insurance in Des Moines, Iowa. Since the commencement of this suit, the defendant Standard Life Insurance Company has taken over the assets and assumed the liabilities of the first named company. The policy was issued January 8, 1914, several months prior to the commencement of the war in Europe, and more than two years prior to the entry of the

United States into the war, and more than three years prior to the Selective Service Act. The insured was 22 years of age at the time he took out the policy. When first issued, the policy contained the following provisions:

"This policy is issued and accepted subject to all of the conditions, benefits, and privileges stated on the subsequent pages hereof. * * * If the insured at any time engage in military or naval service in time of war (militia or National Guard not in active service excepted) and death shall occur during such engagement or as a result thereof, the liability hereunder shall be limited to the cash surrender value of the policy at the date of death, unless the insured shall have obtained the company's written consent and paid the extra premium therefor, at its established rate."

On February 1, 1918, insured made written application for the substitution of a new war service clause in place of the above, in which he relinquished all rights and benefits provided by the clause just quoted, and accepted in lieu thereof the clause substituted therefor. The application was granted, and a new military clause was issued, which was attached to and formed a part of his policy, as follows:

"If the insured engage in military, naval, or Red Cross service outside the continental limits of the United States in time of war, or within the United States in resisting invasion or insurrection, and death occur during such engagement, or as a result thereof within one year of discontinuance of said engagement or service, the company's liability hereunder shall be limited to the sum of all premiums that have actually been paid, together with 5 per cent compound interest thereon from date of payment."

Deceased did not volunteer, but was drawn under the selective draft, and on May 27, 1918, was inducted into the military service of the United States, at Ottumwa, Iowa, was taken to Camp Dodge, Iowa, the next day, left Camp Dodge July 31, 1918, and arrived at Camp Upton in Long Island, August 3d, and shortly thereafter was transferred from said camp to France, as a part of the American Expeditionary Forces. He became a bugler in Company H of the 349th United States In-

fautry, and continued in the military service of the United
States in said connection and in said capacity, to and including
the time of his death, which occurred October 3, 1918. At the
time of his death, and for about 60 days prior thereto, he was
in France, in said military service of the United States in time
of war between the United States and the German Empire and
the Empire of Austria-Hungary. At the time of his death, he
was still in the said military service, outside. the continental
limits of the United States, in time of war. His death was be-
fore the armistice. His death was caused by pneumonia, con-
tracted after his arrival in France, and he was not killed or
wounded in action.

. 1. It is thought by appellee that, because the policy was
originally issued in 1914, before the war commenced, and be-
cause insured did not voluntarily enter the service, this has a
bearing in the case. We shall spend no time on this proposi-
tion. The authorities quite generally hold that the fact that
the service of insured was performed involuntarily, under the
draft, gives no greater rights to the insured and imposes no
greater duty upon the insurance company than if he had en-
listed voluntarily. *Marks v. Supreme Tribe*, 191 Ky. 385 (15
A. L. R. 1277); *Ruddock v. Detroit Life Ins. Co.*, 209 Mich. 638
(177 N. W. 242); *Bradshaw v. Farmers & B. L. Ins. Co.*, 107
Kan. 681 (193 Pac. 332, 11 A. L. R. 1091); *Reid v. American
Nat. Assur. Co.*, 204 Mo. App. 643 (218 S. W. 957); *Nowlan v.
Guardian Life Ins. Co.*, 88 W. Va. 563 (107 S. E. 177); *Railey
v. United Life & Acc. Ins. Co.*, 26 Ga. App. 269 (106 S. E. 203);
*Duckworth v. Scottish W. F. L. A. Society*, 33 Times L. R. 430
(Eng.).

2. There is no public policy against a contract exempting
the life insurer from liability for death of the insured while in
the military service. See cases supra, and *Miller v. Illinois
Bankers' Life Assn.*, 138 Ark. 442 (212 S. W. 310, 7 A. L. R.
378, 380), and *Huntington v. Fraternal Reserve Assn.*, 173 Wis.
582 (181 N. W. 819).

3. It is conceded by appellants that the question whether
or not military service outside the continental limits of the
United States in time of war involves a greater hazard than

that of civil life, or service at home, is a question of fact, and not a question of law—an actuarial fact, as they put it. They cite 19 Cyc. 107, which defines "fact," 21 Cyc. 379, which defines "hazard," and Webster's New International Dictionary 24, which defines "actuarial." We think it is a question of fact, and that actuaries do, no doubt, figure the chances of war in calculating insurance risks and premiums. It does not follow that, because a person is in the military service, or while he is in the service, he is at all times and under all circumstances subject to the hazards of war. A man may be in the service and yet be injured or killed by some means not connected in any manner with the military service. Under the authorities, and under the stipulation, deceased was engaged in the military service outside the continental limits of the United States in time of war. It is argued by appellant that the words "engage in military service," in the policy in suit, mean to become a soldier and take part in the activities of the army; and that, under the record, plaintiff may not recover the full amount of the policy. I shall call attention later in the opinion to the fact that, in addition to the provision in regard to the insured's being engaged in military service, it also reads, "or as a result thereof." To sustain the contention, appellants cite the following cases: *Bradshaw v. Farmers & B. L. Ins. Co.*, supra; *Nowlan v. Guardian Life Ins. Co.*, supra; *Mattox v. New Eng. Mut. L. Ins. Co.*, 25 Ga. App. 311 (103 S. E. 180); *Ruddock v. Detroit Life Ins. Co.*, supra; *Reid v. American Nat. Assur. Co.*, supra; *Malone v. State Life Ins. Co.*, 202 Mo. App. 499 (213 S. W. 877); *Graves v. Knights of Maccabees*, 199 N. Y. 397 (92 N. E. 792); *La Rue v. Kansas Mut. L. Ins. Co.*, 68 Kan. 539 (75 Pac. 494); *Slaughter v. Protective League L. Ins. Co.*, 205 Mo. App. 352 (223 S. W. 819); *Sandstedt v. American Cent. L. Ins. Co.*, 109 Wash. 338 (186 Pac. 1069). Some of these cases sustain appellants' contention. Most of them do not, because of the different provisions in the policies, and because of the facts. There are two lines of authorities dealing with this subject. Some of those just cited are in one line. The other line of cases, including our own case of *Boatwright v. American Life Ins. Co.*, 191 Iowa 253, will be referred to later. It may be

profitable to refer briefly to the cases just cited. In the *Bradshaw* case, deceased drew the pay of a top sergeant, but was not required to drill. He was assigned to duty as a blacksmith and horseshoer. The policy provided that, if insured should engage in military or naval service in time of war, the liability of the insurance company would be limited to premiums. Insured died in a military training camp, of pneumonia. The policy did not contain the clause "or as a result thereof." Aside from the difference in the policies, the case sustains appellants' contention. In the *Nowlan* case, insured died in France, as the result of wounds received in action,—clearly a hazard of war, an extra hazard, not covered by the policy. That is not this case, however. In the *Mattox* case, a case of death from pneumonia at sea, insured enlisted as a first lieutenant in the dental corps, a branch of the military service. It was shown by the evidence that, had he reached France, he would have been subject to orders of his superior officers, and would have been required to go to such portion adjacent to the scene of armed conflict as might make it possible for him to attend members of his regiment, which would bring him within the range of cannon at different times, and certainly within the range of bombing aeroplanes; but no actual combatant service was required of him. He, with the unit to which he was attached, boarded an army transport for France. The evidence showed that the transport was crowded, and that staterooms designed for two were occupied by three or four persons. While aboard the troopship he contracted pneumonia, from which he died while at sea. It was shown by the testimony that the pneumonia from which he died was superinduced by a case of Spanish influenza, which preceded it. There was evidence in that case showing the circumstances under which deceased contracted pneumonia, and under which he died. The circumstances were such as to indicate that they were the result of the hazards of war. In the instant case, the record is silent in regard to such matters. It does not appear that deceased was with his division or his regiment, or where in France he was at the time he contracted pneumonia or died. For aught that appears, he may have been in southern France on a furlough, 200 or 300 miles from the scene

of hostilities, or may have become overheated and caught cold, resulting in pneumonia, in a bicycle race, or something else in no manner connected with his military service, although while or during the time he was in the service. We are told in argument that some of our soldiers, at different times, on or near the firing line, were compelled to lie in the snow all day or all night, without sufficient clothing or medical attention, and so on. It is doubtless true that such were the conditions at times. But it is not shown or claimed that such conditions prevailed all the time, and with all the soldiers, or that such was the situation with the insured in this case. Had it been so shown, it could be justly claimed that his pneumonia and death were because of the hazards of war. In short, death may result from such hazards, or it may result from something entirely disconnected with the service, even though while insured is in the military service. There is no claim, and it could not be claimed, that the policy in suit was void because insured was in the military service or outside the territorial limits of the United States in time of war. Appellant concedes that the policy is in force, but claims that the indemnity is decreased. Some of the policies provide that it shall be void because of a prohibited act. Continuing the review of appellants' citations, we come to the *Ruddock* case, where insured died in camp, of pneumonia. The policy contained this provision:

"Military and naval service in time of war shall be construed to include work as a civilian in any capacity whatever in connection with actual warfare."

A recovery was denied. In the *Reid* case, the opinion states:

"The policy states in unequivocal terms that the insurer shall be liable only for the net reserve value of the policy in case the insured dies 'while engaged in naval or military service in time of war;' " and that "the exemption from liability applies to every death occurring while the insured is engaged in the military service in time of war."

The court seems to have overlooked, or to have given no consideration to another clause in the policy, "or in consequence of such service." The case seems to support appellants' contention. In the *Malone* case, insured died from pneumonia in

camp. That case not only does not sustain appellants' contention, but, as I think, sustains appellee's contention. In that case, a recovery was had against the company, and affirmed. The provision in the policy is quite similar to the policy in the instant case. The language of the policy in the instant case is, "If * * * death occur during such engagement, or as a result thereof;" and in the *Malone* case, "While so engaged, or * * * as a result of such service." The provisions are practically the same. In that case, the extra premium provided for in the policy was not paid. In that case, it was held that insured was deemed to have entered the military service when he had passed the required examination, taken oath, enrolled, and submitted himself to the order of military authorities; but in an action on the policy, it was held that mere proof that insured, while in military service, was killed by an accidental gunshot wound at the hands of a fellow soldier, and that he died in the line of duty,—which means that he was not violating any military law,—is insufficient to show that insured met his death as the result of military service, and to defeat recovery under the provisions of the policy excepting such risk. The provision of the policy has been stated. The defendant contended that the fact alone that insured was in the military service, with a showing of the death of insured, exempted the company from liability. The court held that such a construction was a strained one, and that the clause plainly restricts defendant's exemption from liability to death occurring, not only while so engaged, but also to death "as a result of such service;" that, if this clause is ambiguous in this respect, it should be construed favorably to the insured; and further, that, in order for defendant to escape liability on this ground, it devolved on it to prove both (1) that insured's death occurred while in military service, and (2) that such death resulted from or was caused by such service; and that proof of the first by no means proves the second. On this, the opinion cites *Mathews v. Modern Woodmen*, 236 Mo. 326 (139 S. W. 151); *Wolfgram v. Modern Woodmen*, 167 Mo. App. 220, 226 (149 S. W. 1167). So in the instant case, the mere fact that deceased was outside the United States, and in the military service, and died of pneumonia, without in some

manner connecting his death with the extra hazard of war, is not, as I think, sufficient. There is no showing that his being in France, and in time of war, was in any manner the cause of pneumonia and of his death.

The next case cited by appellant is *Graves v. Knights of Maccabees,* supra,—death while engaged in prohibited occupation. In that case, a by-law of a fraternal benefit order provided that, if the member should engage in the prohibited occupation of the sale of liquor as a beverage, the certificate should be void. There was a straight provision that the policy should be void if the insured should engage in such prohibited occupation, which he did. We have held, however, in regard to such hazardous occupation, in *Fellers v. Modern Woodmen,* 182 Iowa 99, and in two subsequent appeals in the same case, that a policy of life insurance which wholly exempts the insurer from liability for death directly traceable to employment in a named hazardous occupation has no application to a death' from causes not traceable to the peculiar hazards of such hazardous occupation as the proximate cause of the death, even though, at the time of death, insured was actually engaged in such hazardous occupation. We said, citing numerous cases, that the burden of establishing that death is due to causes excepted by the contract is upon the insurer, and that the defendant must make it appear by a preponderance that the injury had some causative connection with the peculiar hazards of the prohibited employment; that it was peculiarly due to that employment; and that these peculiar hazards are the immediately proximate cause of the injury. The case is strongly in point, as it seems to me, and against appellants' contention. See, also, *Bowman v. Surety Fund Life Ins. Co.,* 149 Minn. 118 (182 N. W. 991, 992), where it was held that a condition similar to that in the policy in suit was no more than the condition usual in policies relative to a change of occupation, and that it was the subject of waiver.

Digressing a moment, see, also, *Freeman v. Travelers' Ins. Co.,* 144 Mass. 572, and *State v. Van Vliet,* 92 Iowa 476, 478, to the point that the burden is upon the defendant. In the instant case, defendant did plead the exception, and in its answer set up the military service clause; but it has not established by

evidence, and has not offered any evidence to prove, that the provisions in regard to military service had anything to do with the death of the insured. Defendant's claim is that it is not liable for the full amount of the policy because death occurred while the insured was in the military service outside the United States in time of war, and that it is immaterial that death was not caused by a hazard of war. See, also, *Gibson v. Iowa Legion of Honor*, 178 Iowa 1156, 1179.

The next case cited by appellants is *La Rue v. Kansas Mut. L. Ins. Co.*, supra,—death in Philippino Insurrection. In that case, the court took judicial notice of certain treaties and conditions, and that the inhabitants of the Philippines were in a state of insurrection against the government, and that this was equivalent to war. Insured was killed by a blow from a weapon known as a bolo, in the hands of an insurrecto. The act causing the death was clearly a war hazard. Appellants' next case is *Slaughter v. Protective League L. Ins. Co.*, supra,—death from pneumonia in France. The Supreme Court of Missouri distinguished the *Malone* case, supra, in this: that the provision in the policy in the *Slaughter* case was that the only condition required to create the exemption is that insured be engaged in the military or naval service in time of war, the clause "as a result of such service" not being in the policy. In that case, the status alone was sufficient, under such a provision. The next and last case cited by appellant on this proposition is *Sandstedt v. American Cent. L. Ins. Co.*, supra,—death from pneumonia, in France. Insured was required to obtain permission of the insurance company and to pay extra premiums, before entering into the service. An examination of the case shows that the only question determined was whether there had been a waiver by the insurance company.

It is to be conceded, of course, that the cases are not in harmony, even when the difference in the phraseology of the war risk clauses and the varying facts are considered. Generally, such clauses provide for a limited liability in case the death of the insured occurs, first, while he is engaged in the military or naval service, or second, from a cause due to the increased hazard of war. In the first instance, the extent of the liability

of the insured is determined by the status of the insured at the time of death, irrespective of the actual cause of death; while in the second, it is made to depend on the cause of death. Here we have both. It must be conceded, and it is generally so held by the courts, that the purpose or intent of the insurer in inserting such a clause is to protect itself against the increased hazards of war. Of this it seems to us there can be no doubt. The courts show a marked tendency, in case of death of one whose status would appear to be that defined in the first class of war risk clauses above mentioned as limiting liability, but whose death did not actually result from a hazard of war, to ignore, to some extent, the distinction between the two classes, and to give weight to the intent and purpose of the war clauses, and to hold the company to full liability where death was not, in fact, caused by some hazard of war, or where it is not shown by the party relying upon such clause that the death was the result of some such hazard. Some of the cases, notably the case of *Malone v. State Life Ins. Co.,* supra, as before indicated, require the company to prove both, and hold that the proof of one does not prove the other. To hold that the status under the first clause, alone, governs, would be to ignore the second clause, where they both appear in the same policy. Where both appear, and force is given to both, it seems to me it creates an ambiguity, and that the policy should, and may reasonably, without a forced or strained construction, be construed against the company, under the well established rule that, under such circumstances, the policy should be so construed. In our recent case of *Boatwright v. American Life Ins. Co.,* 191 Iowa 253, the question arose as to the liability under a war risk clause somewhat similar to the one involved in the instant case. In that case, we held that, although the insured had, in one sense, entered the naval service, he was not, while in training at a training station, engaged in the naval service, within the meaning of the war risk clauses of the policy, and that, upon his death there from disease, the company was liable for the full face of the policy. It will be observed that, in that case, only the question of the status of the insured—that is, his death while engaged in the naval service in time of war—was construed. The

words "as a result thereof" were not in the policy in that case. We said it was obvious that the provision in question was inserted as a protection to the insurer against extraordinary hazards of war; that the insured was miles from the zone of actual warfare and from the high seas; that he had assumed none of the hazards of naval warfare; that he had not taken part in any of the movements of the navy, and had not been present when it had been engaged in any conflict with the enemy. It was accordingly held that insured was not, at the time of his death, which occurred at a point remote from the war zone and from the high seas, and at a time when his occupation was not more hazardous than at the time the policy was issued, within the meaning of the clause; and that the exemption did not apply. Such is the situation here, so far as the record shows, except that deceased had crossed the ocean, and passed through whatever war hazards there may have been in that. But that had passed. He had been in France 60 days. There is no pretense that the pneumonia of which he died was contracted while on the transport, or that the sea voyage or anything that thereafter occurred in France, or conditions there, were such as to make his disease and death a hazard of war. It is not shown that pneumonia is a disease peculiar to France. We know, as a matter of common knowledge, that it is not, and that thousands of deaths resulted therefrom in the United States, and among civilians as well as soldiers in the training camps, and under varying conditions of weather, care, medical attention, and so on. The soldiers were the flower of the country, young men selected with special reference to their good health and physical condition; and yet they died by the thousands, while in the United States, from pneumonia. In many instances, the disease was contracted by both civilians and soldiers, under differing conditions, and without any known reason or cause. It is a well recognized fact that the medical corps in the recent war was the most efficient in history; and yet soldiers were taken down and died of pneumonia in the United States, as well as abroad. There is no showing that insured in the instant case was not properly clothed and fed, and that he did not have proper medical attention; nor, as before stated, is it shown that he was anywhere near

the scene of hostilities, or that his service had to do with his contracting pneumonia. While the *Boatwright* case does not go to the length of saying that the liability of the insurer is to be limited only where death results from a hazard of war,—and it was not necessary to do so, in view of the reasoning and the fact that only the clause in regard to the status of the insured was involved,—yet the opinion quotes, as sustaining the position taken, from the case of *Benham v. American Cent. L. Ins. Co.*, 140 Ark. 612 (217 S. W. 462), as follows:

"The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means to take part in. To illustrate, a servant injured while in the operation of a train, means that he must be injured while assisting or taking part in the operation of the train. * * * So here, the words 'death while engaged in military service in time of war' mean death while doing, performing, or taking part in some military service in time of war. In other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service, due to causes entirely or wholly unconnected with such service. * * * By the use of the word 'engaged,' it must have been intended that some activity in the service should have caused the death, in contradistinction to merely a period of time while the insured was in the service."

Some of the cases do not agree with the Arkansas court as to the interpretation of the word "engage." I think the *Boatwright* case is controlling, and determines the instant case, even though the question as to the status of the insured alone be considered. It may be that we ought not to go any further than we have in the *Boatwright* case; but it is not necessary, in the instant case, to go so far, when we consider the additional words in the exemption clause, which do not appear in the Boatwright policy. It seems to me that there is little, if any, difference between the *Boatwright* case and this case. There, he was in

the service, but had not reached the fighting zone. Here, he was
in the service, but there is no evidence that he was any nearer
the zone of danger than was Boatwright.

The Supreme Court of Wisconsin, in *Kelly v. Fidelity Mut.
L. Ins. Co.*, 169 Wis. 274 (172 N. W. 152, 4 A. L. R. 845), sus-
tained a judgment in favor of plaintiff for the amount of the
policy, which contained a provision quite similar to that in the
instant case. In that case, it appeared that the insured was in
France, and that, while in the discharge of his duties in the
army, which was the supervision of saw mills, he was accidentally
killed, by being thrown against a tree from a motorcycle which
he was riding. At the time of his death, he was more than 100
miles from the zone of actual warfare. The court held that the
death of the insured occurred while he was engaged in the mili-
tary service, but not as a result, directly or indirectly, of engag-
ing therein, and therefore that the provision of the policy was
not broken.

Though it is repetition, it may be stated again that there
is nothing in the record in this case to show that the insured
was within 100 miles or 500 miles of the zone of actual warfare.
My conclusion is supported by authority. I shall not stop to
review the cases further, but cite the following additional
cases. *Myli v. American Life Ins. Co.*, 43·N. D. 495 (175 N. W.
631) ; *Malone v. State Life Ins. Co.*, supra; *Rex Health Ins. Co.
v. Pettiford*, (Ind. App.) 129 N. E. 248. This last named case
follows the *Benham* and other cases referred to. See, also, *At-
kinson v. Indiana Nat. L. Ins. Co.*, (Ind. App.) 132 N. E. 263,
where insured was granted a furlough until midnight, dur-
ing which time he was killed, in a collision with an automo-
bile. It was held that this was not a risk of military service.
That the provision is ambiguous, and should be construed against
the company, see *Maxwell v. Springfield F. & M. Ins. Co.*, (Ind.
App.) 125 N. E. 645, citing the *Malone* case, supra, and other
cases. It seems to me that the case is peculiar, in that defend-
ant has made no effort to show the whereabouts of the insured
or the actual conditions in which insured was situated at the
time he contracted the disease, or at the time of his death. Its
counsel seem to realize the importance of this, by statements in

argument as to conditions that sometimes exist. It is doubtless true that, as to some matters referred to, we should take judicial notice. We are cited to certain histories in regard to the World War, to show where certain divisions and regiments were at certain times, and this is alleged to cover the regiment of which deceased was a member. To illustrate, we are referred to history of the 350th Infantry, A. E. F. (1920), pages 36, 37; and it is argued that this shows that deceased was a part of the combat forces of the army, in contact with the enemy. It is doubtful whether we can take judicial notice that the 350th Infantry, or all of that body, and especially each individual, was at a certain place at a certain time. Furthermore, this reference is to the 350th Infantry; while the stipulation of facts recites that deceased entered the military service and became a bugler in Company H of the 349th U. S. Infantry. Historians sometimes disagree in such matters, and they are not finally settled until years afterwards. The trouble is, we are asked to guess as to matters which are the subject of proof, as to the whereabouts of deceased and the conditions existing at the time he contracted pneumonia, or at the time of his death. The burden is on defendant.

I would affirm.